IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HUBERT BEND, JR.,                  :  CIVIL ACTION NO.
                                   :  1:19-CV-4295-JPB-JSA
          Plaintiff,               :
                                   :
     v.                            :
                                   :
EUGENE SCALIA,[1] Secretary of Labor, :
U.S. Department of Labor,          :  **ORDER AND NON-FINAL REPORT**
                                   :  **AND  RECOMMENDATION  ON  A**
          Defendant.               :  **MOTION TO DISMISS**

Plaintiff Hubert Bend, Jr., proceeding *pro se*, brings this action asserting claims of discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Defendant moves to dismiss the Complaint. For the reasons stated below, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [23] be **GRANTED in part** as to Plaintiff's claims of FMLA discrimination and **DENIED in part** as to his claims of disability discrimination. Should the District Court adopt this recommendation, the Court further

---

[1] Upon his swearing-in as Secretary of Labor on September 30, 2019, Eugene Scalia automatically substituted Patrick Pizzella as defendant in this action. *See* Fed. R. Civ. P. 25(d).

**RECOMMENDS** that Plaintiff be **ORDERED** to file an amended complaint repleading his claim of disability discrimination under the Rehabilitation Act. The Court **DENIES** Movant Michael Buesgens' Request to File Evidence [30].

## I.   BACKGROUND

Plaintiff filed this action in the United States District Court for the Middle District of Alabama on June 20, 2018. Defendant moved to transfer the case to this Court on September 7, 2018 on the grounds that the events underlying Plaintiff's Complaint primarily took place in this district. *See* Mot. to Transfer [14]. On September 24, 2019, Judge Thompson granted Defendant's request and transferred this action to this Court. *See* Order [20]. Upon transfer, the Court ordered Defendant to file a responsive pleading; Defendant did so, filing his Motion to Dismiss [23] on November 5, 2019. Plaintiff responded on December 16, 2019, without explanation of his delay and without any request that his response be deemed timely. *See* LR 7.1(B), NDGa ("Any party opposing a motion shall serve the party's response . . . not later than fourteen (14) days after service of the motion . . . ."). The Court will nevertheless consider Plaintiff's Response [28] to the extent that it raises pertinent arguments.

The following facts, taken from the Complaint and an attached decision of the Equal Employment Opportunity Commission, are accepted as true for purposes of

evaluating Defendant's motion. Plaintiff worked as an Investigator in the Labor, Wage, and Hour Division of the United States Department of Labor at its District Office in Atlanta, Georgia from September 2001 through April 2016. Compl. [1] at ¶ 5; EEOC Decision [1-1] at 1. Plaintiff was on leave pursuant to the FMLA in July 2015; nevertheless, on July 22, 2015, a management official instructed him to report to the office the next day. *Id.* On July 23, 2015, a management official told Plaintiff that he was "crazy" and that he "had issues." *Id.* at 2. Plaintiff then filed a complaint of discrimination on the bases of race and disability with the Equal Employment Opportunity Commission on January 5, 2016. Compl. [1] at ¶ 11; EEOC Decision at 1. After receiving a right-to-sue notice from the EEOC on June 13, 2018, Plaintiff filed this action. Compl. [1] at ¶ 11; EEOC Decision [1-1] at 3–4.

## II.   DISCUSSION

### A.   *Motion to Dismiss*

#### 1.   Standard on a Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff,

however, may not merely plead facts in a complaint sufficient to find a claim to relief is conceivable; instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id. See also Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). At the same time, however, nothing in the leniency which courts afford *pro se* filings excuses a plaintiff from complying with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Tech.*, 313 F.3d 1295, 1297 (11th Cir. 2002). A court may not rewrite inadequate pleadings—including those filed by *pro se* plaintiffs—to plead essential allegations. *See Pontier v. City of Clearwater*, 881 F. Supp. 1565, 1568 (M.D. Fla. 1995). Moreover, although a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted

factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006).

The Court is generally required to provide a *pro se* litigant an opportunity to replead a deficient complaint before dismissal, unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). *See also Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (explaining that a district court should give a *pro se* plaintiff an opportunity to amend a complaint if such amendment would not be futile), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*).[2]

### 2. Plaintiff's Disability Discrimination Claims

#### a. The Applicability of the Rehabilitation Act

Plaintiff claims that he has been subject to disability discrimination in violation of his rights under Title I of the ADA. Specifically, he claims that he was denied "leave as a reasonable accommodation" and that his supervisors refused to

---

[2] *Wagner* overruled *Banks* as to counseled litigants, but specifically stated that it did not address *pro se* litigants. *See Wagner*, 314 F.3d at 542 n.1. Thus, the *Bank* rule remains applicable to *pro se* litigants when the Court is determining whether to dismiss a *pro se* complaint with prejudice. *See Duff v. Steub*, 378 F. App'x 868, 872 n.5 (11th Cir. 2010).

"participate in the interactive process" regarding his request for leave. *See* Compl. [1] at 2–3.

Defendant correctly counters that claims under Title I of the ADA are categorically unavailable to federal employees alleging discrimination in employment. The ADA does not apply to employees of the federal government because the federal government is not considered an "employer" under the ADA. *See* 42 U.S.C. § 12111(5)(B)(i) (specifically excluding "the United States" from the definition of "employer"). *See also Klute v. Shinseki*, 797 F. Supp. 2d 12, 17 (D.D.C. 2011); *Rand v. Geithner*, 609 F. Supp. 2d 97, 100 (D.D.C. 2009). Instead, the exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination is the Rehabilitation Act, 29 U.S.C. § 791. *See McGuinness v. United States Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984); *Rand*, 609 F. Supp. 2d at 100. Plaintiff does not address Defendant's argument, instead attaching annotated excerpts of Section 501 of the Rehabilitation Act to his Response. *See* Resp. [28] at 4–9. In liberally construing Plaintiff's Complaint, however, the Court interprets his claims of disability discrimination as arising under the Rehabilitation Act. The Rehabilitation Act prohibits federal agencies from discriminating in employment against "otherwise qualified" individuals with a disability. 29 U.S.C. §

794(a). *See also Boone v. Rumsfeld*, 172 F. App'x 268, 270 (11th Cir. 2006); *Mullins v. Crowell*, 228 F. 3d 1305, 1313 (11th Cir. 2000).

b.    Administrative Exhaustion

Discrimination claims brought under the Rehabilitation Act are generally governed by the same standards as claims brought under Title I of the ADA. *See Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997). Defendant argues that, even construed as arising under the Rehabilitation Act, Plaintiff's claims fail because he has not exhausted his available administrative remedies under the statute. Federal employees alleging claims under the Rehabilitation Act are required to exhaust administrative remedies in the same manner as plaintiffs bringing claims under Title VII of the Civil Rights Act. *See Litman v. Sec. of the Navy*, 703 F. App'x 766, 772 (11th Cir. 2017) (citing *Doe v. Garrett*, 903 F.2d 1455, 1461 (11th Cir. 1990)); *Gaillard v. Shinseki*, 349 F. App'x 391, 392 (11th Cir. 2009). That is, before filing a lawsuit, they must complain of the underlying conduct to the Equal Employment Opportunity Commission. *See Booth v. City of Roswell*, 754 F. App'x 834, 836 (11th Cir. 2018) (citing *Wu v. Thomas*, 963 F.2d 1543, 1547 (11th Cir. 1989)).

A plaintiff who then files a lawsuit asserting claims of employment discrimination cannot bring any claim that was not included in their EEOC

complaint. *See Zellars v. Liberty Nat'l Life Ins. Co.*, 907 F. Supp. 355, 358 (M.D. Ala. 1995) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). In determining the permissible scope of an employment discrimination complaint, the Court must first look to the EEOC complaint and investigation. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983). A plaintiff is precluded from pursuing any claims in a federal court action that are not "like or related" to the claims asserted by the plaintiff in their EEOC complaint or that could not reasonably be expected to arise during the course of the EEOC investigation. *See Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). *See also Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985); *Evans*, 696 F.2d at 928; *Buffington v. General Time Corp.*, 677 F. Supp. 1186, 1192 (M.D. Ga. 1988). Therefore, additional charges in the civil complaint which do not arise naturally and logically from the facts presented to the EEOC are not related to the original complaint and cannot be pursued in a civil action.

Plaintiff filed this action after complaining to the EEOC of employment discrimination. The EEOC recounted the facts of Plaintiff's initial complaint as follows:

1. On July 22, 2015, a management official instructed [Plaintiff] to report to the office on July 23, 2015, even though he was allegedly on leave provided under the FMLA.

2. On July 23, 2015, a management official told [Plaintiff] that he was "crazy" and "had issues."

EEOC Decision [1-1] at 1–2. Plaintiff's claims of disability discrimination in his Complaint rest specifically on an allegation that his supervisors denied him "leave as a reasonable accommodation" and that they refused to "participate in the interactive process" in doing so. Compl. [1] at 2–3. But neither the EEOC records attached to the Complaint nor those attached to Plaintiff's Response expressly make mention of Plaintiff requesting or being denied any kind of accommodation for a disability, at least not in so many words. Plaintiff makes no argument that the claims of disability discrimination found in his Complaint are in any way like or related to the claim he advanced before the EEOC.

Nevertheless, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [discrimination statutes]." *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (quoting *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). Where a plaintiff is unassisted by counsel in EEOC proceedings, a court must broadly construe what the EEOC may have investigated in response to a particular charge and, by extension, what is like or related to that charge. *See Gregory*, 355 F.3d at 1280. Defendant has

attached a lengthy document referred to as an "EEO Investigative Affidavit," which appears to be the internal Department of Labor form in which Plaintiff submitted his original complaint to the agency. *See* Exh. A [23-1]. Defendant does not appear to have attached, and the record does not appear to otherwise include, Plaintiff's formal complaint to the EEOC.[3] While Plaintiff's Investigative Affidavit does not clearly state, in so many words, that he requested any "accommodations," it does attach and incorporate the original grievance in which Plaintiff requested certain "remedies." *See id.* at 24. After setting forth the details of the July 23 altercation that allegedly "aggravated" his disability, Plaintiff requested "remedies," that included "medical retirement," "administrative leave for aggravated stress," and "[i]mmediate reassignment." *Id.*

The specific remedy of "medical retirement," of course, would not constitute an accommodation within the meaning of the ADA or the Rehabilitation Act, because "retirement" would not involve continuing to perform the essential duties

---

[3] The judicial complaint originally filed in the Middle District of Alabama on June 20, 2018 is styled as an "EEOC Complaint." Compl. [1]. But this document was executed after the EEOC's decision denying Plaintiff's claim, and so this document is evidently not Plaintiff's formal complaint to the EEOC. Rather the document "EEOC complaint" appears reflect Plaintiff's judicial complaint after the dismissal of his administrative action.

of the job. However, temporary leave for an "aggravation" of stress combined with "reassignment," to another supervisor or duties, could in some circumstances constitute a reasonable accommodation. *See Richio v. Miami-Dade Cty.*, 163 F. Supp. 2d 1352, 1365 (S.D. Fla. 2001) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)). At a minimum, the Court could not say otherwise as a matter of law at this juncture.

Thus, the Court cannot find that Plaintiff failed to request work-related "remedies" that could qualify as accommodations. And because Plaintiff attached these requests in his complaint to the EEOC, the agency's failure to agree to these requests was likely within the scope of the EEOC's investigation. Thus, at least on this record, and applying the liberal construction standards appropriate at this juncture, the Court finds that Plaintiff's requests for accommodations and complaint that the agency failed to grant those accommodations was arguably within the scope of his EEOC complaint. The Court therefore declines to recommend that Plaintiff's disability discrimination claim be dismissed on grounds of failure to exhaust.

c.    Failure to State a Claim

Defendant next argues that Plaintiff's disability discrimination claim fails because he has not adequately pleaded that he is disabled or a qualified individual within the meaning of the statute. Both are essential elements of Plaintiff's claims—

to establish a *prima facie* case of unlawful discrimination under the Rehabilitation Act, a plaintiff must ultimately present sufficient evidence to prove that he: (1) has a disability as defined under the Act, (2) is an otherwise "qualified individual" meaning that, with or without reasonable accommodations, he can perform the essential functions of the job, and (3) was discriminated against because of his disability or perceived disability. *See Mazzeo v. Color Resolutions Int'l LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014); *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). Similarly, to prevail on a claim of disability discrimination based on an alleged failure to accommodate, a plaintiff must demonstrate that he: (1) has a disability, (2) was a qualified individual when he suffered the adverse employment action complained of, and (3) was discriminated against because of his disability by being denied a reasonable accommodation that would allow him to keep working. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001); *Holbrook*, 112 F.3d at 1526; *Morisky v. Broward Cty.*, 80 F.3d 445, 447 (11th Cir. 1996).

Plaintiff's Complaint does not adequately plead that he is either disabled or a qualified individual under the Rehabilitation Act. To be considered disabled—and thus protected—under the Rehabilitation Act, Plaintiff must show that he (1) has a physical or mental impairment that substantially limits one or more major life

activities, (2) has a record of such impairment, or (3) has been regarded as having such an impairment. *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1310–11 (11th Cir. 2007). Although documents attached to Plaintiff's Response indicate that he suffers from post-traumatic stress disorder, *see* Resp. [28] at 10, Plaintiff's Complaint itself does not even conclusorily state so. Plaintiff's failure to identify a disabling condition in his Complaint is grounds for dismissal for failure to state a claim of disability discrimination. *See Townsend v. Staples, Inc.*, No. 1:15-CV-2835-WSD-CMS, 2015 WL 13741251, at *2 (N.D. Ga. Oct. 9, 2015), *report & rec. adopted by* 2016 WL 3344579 (N.D. Ga. June 15, 2016). Likewise, Plaintiff pleads no facts to show that, at the time of the alleged discrimination, he was qualified to perform the essential duties of his job with or without a reasonable accommodation.

As noted above, however, the Court is generally obliged to allow Plaintiff, who is proceeding *pro se*, an opportunity to amend the Complaint to attempt to cure these deficiencies. Defendant argues that any amendment would be futile, and need not be allowed in this case, because Plaintiff has already made statements expressly contradicting any status as a "qualified individual." Specifically, Plaintiff's administrative complaint stated that "I am not able to perform any duties," and "I cannot work." Exh. A [23-1] at 5. These statements certainly call into question

whether Plaintiff was a qualified individual, because a qualified individual must be able to perform the essential duties of his or her job, at least with a reasonable accommodation.

In the end, the opportunity to amend should not be denied Plaintiff based on this language. First, technically, this language is contained in documents that are outside of the pleadings and which are therefore not properly before the Court as relating to the question of whether Plaintiff states a substantive claim. Second, the Court cannot say as a matter of law that the only interpretation of these statements would be to negate Plaintiff's status as a qualified individual. Perhaps Plaintiff's statement, "I cannot work," was not meant as broadly as Defendant interprets, but rather was made in the context of having already been denied for work-related "remedies" or accommodations. In other words, perhaps Plaintiff simple meant, "I cannot work because I was denied reasonable accommodations." Or perhaps this statement simply reflected Plaintiff's opinion about his vocational abilities at particular point in time—May 2016—which was ten months or so after he was denied his requested "remedies" and instructed to report back to work.

Regardless of the explanation, if there is one, as to whether someone who "cannot perform any duties" nevertheless is a "qualified individual," the Court finds that Plaintiff should be given an opportunity to amend. In any such amendment,

Plaintiff should be ordered to state specific facts in support of his failure-to-accommodate claim, and to plausibly establish each of the elements, that is, that Plaintiff had a disability, how that disability substantially limited his major life activities, that Plaintiff requested and was denied a reasonable accommodation relating to that disability, and, critically, facts to explain that Plaintiff was able to perform the essential tasks of his job at least with a reasonable accommodation. Plaintiff is reminded that conclusory recitations of these legal elements will not suffice. Rather, he must allege specific facts that meet these elements.

### 3. Plaintiff's FMLA Discrimination Claims

Plaintiff additionally asserts that Defendant discriminated against him "by denying rights protected by the [FMLA] by directing [his] management not to participate in the interactive process." Compl. [1] at 3. Defendant counters that this claim is barred by sovereign immunity.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). In other words, "[a]bsent waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). Without unequivocal congressional waiver of sovereign immunity, the

judicial branch has no authority to entertain private suits against a federal agency. *See Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002) (citing *United States v. King*, 395 U.S. 1, 4 (1969)).

Plaintiff brings his suit for damages under the FMLA, which protects the leave rights of both federal employees and non-federal public and private employees. The statute, however, distinguishes between federal employees and non-federal public and private employees; while all are afforded the same substantive rights under the FMLA, the rights of federal employees derive from Title II, rather than Title I. *Cavicchi v. Sec. of Treasury*, No. 04-10451, 2004 WL 4917357, at *6 (11th Cir. Oct. 15, 2004). Titles I and II differ in their prescribed enforcement mechanisms. Title I of the FMLA authorizes private rights of action against non-federal employers for violations of rights created by the statute. Congress did not include such an authorization in Title II, instead choosing to allow federal employees to vindicate their FMLA rights through—and only through—administrative procedures. *See Robinson v. Shinseki*, No. 8:13-cv-1268-T-33EAJ, 2013 WL 5720336, at *7–8 (M.D. Fla. Oct. 21, 2013); *Diggs v. Shinseki*, No. CV 109-111, 2009 WL 3753999, at *2–3 (S.D. Ga. Nov. 9, 2009).

Defendant contends that this disparity in remedies indicates that Congress has not waived the federal government's sovereign immunity as to FMLA claims

brought by federal employees. Plaintiff does not address Defendant's argument regarding the FMLA, instead arguing, inappositely, that Congress has waived Defendant's sovereign immunity with regard to claims brought under Title VII of the Civil Rights Act of 1964, the ADA, and Section 501 of the Rehabilitation Act. *See* Resp. [28] at 2. Although no binding precedent exists as to whether claims against the federal government under Title II of the FMLA are barred by sovereign immunity, several courts, including the Eleventh Circuit in an unpublished opinion, have held as much. *See Cavicchi*, 2004 WL 4917357, at *6 (holding that sovereign immunity precludes private suits under Title II of the FMLA because of "the absence of an express authorization" for such suits); *Russell v. United States Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999) (concluding that "the absence of an express waiver of the government's sovereign immunity in Title II of the FMLA bars private suits for violations of its provisions") (citing *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997)); *Baldwin v. Shinseki*, No. 1:12-cv-58-MP-GRJ, 2012 WL 4466331, at *1–2 (N.D. Fla. May 9, 2012) ("The absence of [a] private right of action indicates that the federal government has not waived its sovereign immunity with respect to FMLA claims by federal employees."), *report & rec. adopted by* 2012 WL 4466327 (N.D. Fla. Sept. 27, 2012); *Diggs*, 2009 WL 3753999, at *2. The Court finds such authority persuasive and holds the same.

Plaintiff worked as an Investigator for the United States Department of Labor and was thus a federal employee at all relevant periods. Compl. [1] at ¶ 5; EEOC Decision [1-1] at 1. Plaintiff's FMLA rights therefore derive from Title II of the statute. Because Congress has not waived the federal government's sovereign immunity with regard to claims brought under Title II of the FMLA, Defendant is entitled to assert it as a defense to Plaintiff's FMLA claims. Plaintiff thus presents no viable FMLA claims. Further, because a valid assertion of sovereign immunity deprives a court of jurisdiction to hear a claim, *see Meyer*, 510 U.S. at 475, any amendment of Plaintiff's Complaint as to his FMLA claims would be futile. Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [23] be **GRANTED** as to Plaintiff's FMLA claims.

B.    *Request to File Evidence*

Finally, Movant Michael Buesgens, "AKA Nevada Smith," seeks leave to file what is purportedly evidence related to this action. *See* Request [30]. Buesgens does so for a second time, having previously made and withdrawn a similar request. *See* Request [24]; Withdrawal [27]. According to Buesgens, "[t]his court cannot make [an] informed decision on [Defendant's] motion to dismiss because relevant evidence of DOL wrongdoing is missing." Request [30] at ¶ 1. Buesgens prefaces his purported evidence with a series of attacks on what he declares to be "EEOC

propaganda" and the "dishonest, deceitful" conduct of Defendant's counsel, including a comparison of Defendant's Motion to Dismiss to a "rocket" and "torpedo" designed to inflict upon Plaintiff "PTSD trauma" and trigger "DOL-AUSA induced flashbacks." *See id.* at ¶¶ 26, 31, 33–39. Because of such conduct, Buesgens asks the Court to order Defendant to "produce the complete record" of all action taken in response to Plaintiff's complaints of discrimination to and to deny Defendant's Motion to Dismiss. *See id.* at ¶¶ 41–42.

Michael Buesgens is no stranger to the federal courts, his vexatious litigation history having earned him the distinction of being "barred from filing any future civil actions in any federal court in the United States without first seeking leave. . . ." *Buesgens v. Travis Cty.*, No. A-07-CA-427-SS, 2007 WL 9677045, at *6 (W.D. Tex. June 20, 2007). Buesgens' litigation history includes forays into cases in which he apparently "has no interest." *Gray v. Berryhill*, No. 6:16-CV-500-Orl-40JBT, 2018 WL 7917611, at *1 (M.D. Fla. July 13, 2018). *See also Porter v. Dep't of Treasury*, 564 F.3d 176, 178 (3d Cir. 2009). Buesgens is not a party to this action nor has he has not sought to intervene under Rule 24 of the Federal Rules of Civil Procedure. Buesgens identifies himself only as a "former IRS employee" who "has interest in justice." First Request [24] at 1–2. However, "[a]s a mere non-party, [he] has no standing to file pleadings or motions in this lawsuit." *Dail v. City of Goldsboro*, No.

5:10-CV-00451-BO, 2011 WL 2293904, at *1 (E.D.N.C. June 9, 2011). As Buesgens has been made aware, a mere "interest in justice" does not entitle him to participate in lawsuits. *See Prater v. Acosta*, No. 5:18-CV-01174, at [21] (S.D.W.V. Oct. 16, 2018) (finding Buesgens' "interest" and "personal curiosity" in case to be insufficient grounds for intervention). Accordingly, the Court **DENIES** Movant Michael Buesgens' Request to File Evidence [30].

## III.    CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that Defendant's Motion to Dismiss [23] be **GRANTED in part** as to Plaintiff's claims of FMLA discrimination and **DENIED in part** as to Plaintiff's claims of disability discrimination. Should the District Court adopt this recommendation, the Court further **RECOMMENDS** that Plaintiff be **ORDERED** to file an amended complaint repleading his claims of disability discrimination under the Rehabilitation Act within **fourteen (14) days** of the date of such an order. The Court **DENIES** Movant Michael Buesgens' Request to File Evidence [30].

**IT IS SO ORDERED AND RECOMMENDED** this 11th day of February, 2020.

_____

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE